IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| SHELDON DUWAUN SIMMONS, | § | |
| Institutional ID No. 1588486, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:18-CV-0069-BU |
| | § | |
| TIMOTHY S. HOOPER, *et al.*, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and orders of the Court (Dkt. Nos. 6 and 24), this civil action was transferred and subsequently re-assigned to the undersigned United States Magistrate Judge. Plaintiff has not consented to proceed before a magistrate judge. Therefore, in accordance with the Court's transfer order, the undersigned enters these findings and conclusions, and recommends that Plaintiff's claims in this action be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.    BACKGROUND

Plaintiff Sheldon Duwaun Simmons ("Simmons"), incarcerated by the Texas Department of Criminal Justice ("TDCJ") and proceeding *pro se*, filed this 42 U.S.C. § 1983 action on May 31, 2018. Dkt. No. 1. The Court granted Simmons leave to proceed *in forma pauperis*, which subjects his complaint to the Court's preliminary judicial screening measures under 28 U.S.C. § 1915(e)(2). Dkt. No. 5. Because Simmons brings his suit against government officials, his complaint is also subject to screening under 28 U.S.C. § 1915A.

In 2016, Simmons filed a separate § 1983 lawsuit against three wardens and one prison captain, Timothy Hooper, the latter also named as a defendant in the current lawsuit, for not adhering to the TDCJ cleaning policy for inmate cells at the Robertson Unit (hereafter, the "2016 Lawsuit"). *See Simmons v Hooper*, Civil Action No. 1:16-CV-00015-C. In the 2016 Lawsuit, Simmons alleged that he had been continually housed in administrative segregation ("Ad-Seg") at the Robertson Unit, during which time his cell was not cleaned on a regular basis. *See* Dkt. No. 36 in No. 1:16-CV-00015-C. Further, he alleged he was not allowed to have access to mops, brooms, scrub brushes, cleaning chemicals, or other supplies, apart from a modest supply of "bippy" powder and a "floor towel." *See id*. at 3. Simmons claimed that these cell conditions, and TDCJ's failure to follow its cleaning policy constituted a violation of his Eighth Amendment rights. *Id*.

The Court dismissed Simmons's claims against the three wardens with prejudice, finding that Simmons had failed to allege any facts supporting the wardens' personal involvement in the alleged deprivation of his constitutional rights. *See* Dkt. No. 37 in No. 1:16-CV-00015-C. Moreover, the Court dismissed Simmons's claims for compensatory damages, as he had failed to allege any physical injury as required by the Prison Litigation Reform Act ("PLRA"). *See id*.

The individual liability claim against Timothy Hooper in the 2016 Lawsuit — that Hooper violated Simmons's Eighth Amendment rights when he repeatedly refused to provide Simmons with cleaning supplies for his cell — survived screening and Hooper was ordered to answer the allegations. *See* Dkt. No. 37 in No. 1:16-CV-00015-C. However, after Hooper answered, the Court dismissed the remaining individual capacity claim against Hooper with prejudice for failure to state a claim. *See* Dkt. No. 52 in No. 1:16-CV-00015-C. In granting Hooper's motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court found that Simmons's claim against Hooper was not

2

plausible on its face, noting that while the conditions of Simmons's cell might not have been ideal, his claims of inadequate cleaning supplies failed to rise to the level of deliberate indifference. *See id*. at 4.   The judgment on that claim was entered September 21, 2018.   *See* Dkt. No. 53 in No. 1:16-CV-00015-C.

On May 31, 2018, while the 2016 Lawsuit was still pending, Simmons filed the current lawsuit.  Dkt. No. 1.  The Court permitted Simmons to file an Amended Complaint on February 19, 2019.  Dkt. No. 14.  In his Amended Complaint, Simmons re-urges his cleaning supplies/policy claim against Hooper — but in his supervisory capacity — and against a new set of defendants. *Id*. at 4–7.  Simmons also brings other claims regarding prison conditions against Hooper and an additional twenty TDCJ corrections officers.   *See id*.  Lastly, Simmons brings a claim against a nurse practitioner at the Robertson Unit, Jackie Gregory, for "sadistically" performing a test for sexually transmitted diseases ("STDs") on Simmons.   In total, Simmons brings claims against twenty-two defendants.[1]

Upon review of the Amended Complaint, the Court ordered Simmons to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976).  Simmons timely completed and returned the questionnaire.   Dkt. No. 21.   Simmons also filed two sworn declarations as supplements.  *See* Dkt. Nos. 17 and 18.  The undersigned has reviewed Simmons's Amended Complaint, supplements, and his questionnaire responses, as well as authenticated records provided by the TDCJ.  The following findings, conclusions, and recommendation are based on that review.

---

[1] Two of these defendants, Officer Jeremy Delacruz and Sgt. Bradley Johnson, are not listed when Simmons provides a brief description of the acts or omissions of each defendants in his Amended Complaint but are listed on the extended caption. However, because Simmons provided further details regarding these two individuals in his answers to the questionnaire, the undersigned considers them properly added as defendants. *See* Dkt. No. 21. at 41–42.

## II.     LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint is one that lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories.  *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records.  *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).  And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such

plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). Plaintiffs must plead enough facts to demonstrate that their claims have "substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). This means that the facts pled must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc*. 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    DISCUSSION AND ANALYSIS

Other than his claim against nurse practitioner Jackie Gregory, Simmons's claims in this lawsuit are of four varieties. First, and most prominently, Simmons re-urges his "cell cleaning policy/supplies" and dilapidated cell conditions claims from the 2016 Lawsuit, but against a new set of defendants. Second, Simmons claims that the defendants refused to adhere to fire and safety procedures and evacuate inmates during fire drills. Third, Simmons claims that the defendants exposed him to contaminated drinking water. And finally, Simmons claims that prison officials have tapped his spine with an "illegal/clandestine apparatus" which induces sleep.

Simmons seeks as relief $150,000 in compensatory damages for "mental and physical damage," $150,000 in punitive damages to "deter" future violations, and $100 in nominal damages. *See* Dkt. No. 14 at 8; Dkt. No. 21 at 43. He also seeks declaratory and injunctive relief in the form of requiring defendants to comply with the TDCJ cell-cleaning policies, to comply with fire and safety codes, and to paint and remove harmful mold in cells. *Id*.

Simmons has had multiple opportunities to amend his pleadings throughout this case. As noted above, he was permitted to file an Amended Complaint (Dkt. No. 14), two sworn declarations (Dkt. Nos. 17 and 18), and respond to the magistrate judge's questionnaire (Dkt. No. 21), all of which the undersigned considered through the screening process. Simmons has therefore had ample opportunity to plead his best case on each of his claims and further amendment would be futile. *See Stem v. Gomez*, 813 F.3d 205, 215–16 (5th Cir. 2016).

    A.    <u>Claim against Jackie Gregory</u>

Simmons's Eighth Amendment claim against Jackie Gregory is that she "shoved" a Q-tip swab into the head of his penis "with unnecessary force" while conducting an STD test. Dkt. No. 14 at 4.

To state an Eighth Amendment claim against Gregory, Simmons must allege that she acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009)). "Deliberate indifference is an extremely high standard to meet." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). And it is not enough to show that a prison official failed to perceive and alleviate a significant risk that the official should have perceived and alleviated. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

When asked through the magistrate judge's questionnaire to provide all facts that support his claim against Gregory, Simmons responded:

Defendant did "sadistically" knowingly and intentionally and wantonly shove Q-tip into the penis of Plaintiff causing severe pain and bleeding along with mental anguish, distress and depression.  Defendant knowingly & wantonly used the "wrong size" scwab/Q-tip [sic] to conduct S.T.D. test on Plaintiff on said date!

Said Q-tip was presumably the "wrong" size as it was "large" and plaintiff had STD test done in Bill Clements unit and the Q-tip was "much smaller!"

Defendant knowingly & intentionally caused "wanton" pain, blood to flow from penis during urination moments later and mental distress and anguish!!

Dkt. No. 21 at 16.

Simmons further alleges that Gregory ordered a nurse

to retrieve a STD kit from the back and the nurse came back with two (2) different kits with one kit having a small swab or Q-tip and the other had a large swab or Q-tip.  They spoke to each other presumably trying to figure out which kit to use!  I tried to tell the nurse that the small swab is usually used but was told to hush!  The Defendant J. Gregory chose the kit that contained the large swab!  When she inserted said swab into the head of plaintiff's penis she "shoved" it in with unnecessary force causing plaintiff to yelp and bow forward!

Dkt. No. 17 at 1–2.

Even assuming the truth of Simmons's allegation that the nurses were confused and "trying to figure out which kit to use" and that this confusion resulted in them using the larger of the two available swabs, and further assuming that the use of the larger swab was the incorrect swab, such allegations would support, at best, a claim for medical negligence.  Such factual allegations fail to state a cognizable claim under § 1983.  Indeed, Simmons's characterization in his Complaint to this being an incident of "medical malpractice" is far more plausible on these facts. *See* Dkt. No. 1 at 3.  However, allegations of malpractice, negligence, or unsuccessful treatment fail to establish the deliberate indifference required in the § 1983 context.  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  Instead, an inmate must demonstrate that prison medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar

conduct that would clearly evince a wanton disregard for any serious medical needs" *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

And Simmons's conclusory characterization that Gregory acted "sadistically," "knowingly," "intentionally," and "wantonly," without facts to support those characterizations does not make those conclusions plausible. A court need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

At most, Simmons alleges that Gregory and another nurse were trying to determine the correct kit to use and when he challenged their determination, they told him to "hush." But nothing Simmons alleges supports the conclusion that Gregory either wanted to inflict pain on Simmons or was deliberately indifferent to a wanton infliction of pain. While it may be theoretically possible that Gregory acted "sadistically" and "wantonly," Simmons fails to allege facts that move his claims from the realm of the mere possible to the realm of the plausible. And "[a] claim . . . is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

And, again, the only fact Simmons alleges in support of his conclusion that Gregory used the incorrect swab is Simmons's lay belief that the larger swab was incorrect. But a disagreement with medical treatment alone does not constitute deliberate indifference. *See Domino*, 239 F.3d at 756. Simmons's opinion on that issue falls far short of making his claim plausible. Nor does the fact that Gregory used the swab that Simmons did not want her to use state a claim of deliberate indifference.

Here, Simmons acknowledges that he received the medical care he needed. While Simmons is clearly displeased that the exam was painful, he has alleged no facts — as opposed to unsupported conclusions — that support a plausible claim that Gregory inflicted that pain unnecessarily or wantonly. For these reasons, Simmons's Eighth Amendment claim against Jackie Gregory should be dismissed.

B.    Failure to comply with cell cleaning policy/procedures and dilapidated cells

Simmons claims that the defendants "failed to adhere to cell cleaning policy/procedures" and, as a result, he was "forced to sweep [his] cell with [his] Ad-Seg jumper and mop or clean [his] floor with a small rag." *See* Dkt. Nos. 1, 8, 14, 18. He claims that the defendants refused to remove inmates from their cells so that an "SSI (porter)" could enter and clean the cells. Dkt. No. 21 at 3. Instead, he claims that he was issued weekly "6–8 small soaps to clean [his] body with and a very small amount of bippy powder to clean [his] entire cell with." Dkt. No. 18 at 2.

Because of the failure to follow the TDCJ cleaning policy, Simmons claims the cells in Ad-Seg are dilapidated. He alleges that "there is mold and rust in the cells" and that they are infested with roaches and rodents. Dkt. No. 18 at 2. Simmons alleges that the mold is hazardous to his health and that "[t]he roach infestation causes [his] asthma to flare and is very stressful to live with." *Id*. at 2–3. Simmons claims that he could remove the mold himself if he were provided more "bippy" powder or other chemicals. Dkt. No. 21 at 17. He also claims that prison staff repeatedly refused to paint the cells, noting the "cells in Ad-Seg haven't been painted for 'decades!'" *Id*.

Simmons made this same unsanitary cell conditions claim against Hooper in his individual capacity in the 2016 Lawsuit. That claim was dismissed with prejudice upon the Court's finding

that Simmons had failed to state a plausible claim of deliberate indifference. *See* Dkt. No. 52 at 4 in Civil Action No. 1:16-CV-00015-C.

In this lawsuit, Simmons makes the same claim against Hooper, but now in his supervisory capacity. Dkt. No. 21 at 5. In that capacity, Simmons alleges that Hooper failed to ensure that the cleaning policy was followed by his subordinate officers. *Id*. at 22; Dkt. No. 14. at 4. He makes the same claim against Lt. Allen L. Turner, Lt. Thaddeus J. Porter, Assistant Warden Leeroy Cano, Assistant Warden Monte A. Griffin, Warden Steven A. Sperry, and Lt. Paul H. Valdez Jr., also all presumably in their supervisory capacities. *See* Dkt. No. 14 at 4–7; Dkt. No 21 at 5, 29, 33, 40. And he makes this claim against Turner, Porter, and Valdez in their individual capacities, for failing to adhere to the cleaning policy themselves when they were subordinate officers. *See id*.

To hold a supervisor liable under § 1983, a prisoner must show "either [that] the supervisor personally was involved in the constitutional violation or that there is sufficient causal connection between the supervisor's conduct and the constitutional violation." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F. 3d 681, 689 (5th Cir. 2003)).

Here, despite multiple opportunities to allege facts showing how prison supervisors Hooper, Turner, Porter, Cano, Griffin, Sperry, or Valdez were personally involved in allegedly violating Simmons's constitutional rights, Simmons has failed to do so. In the magistrate judge's questionnaire, the Court specifically asked Simmons to provide all factual details regarding the personal involvement of each of these defendants. *See* Dkt. No. 21 at 22, 23, 24, 26, 29, 33. And in each instance, Simmons repeats the same conclusory allegations that the supervisors failed to ensure that subordinates were adhering to the cell cleaning policy (e.g., "Repeatedly failed to ensure that [] staff was following/complying with cell cleaning policy and procedures."). *See id*.

In the case of Warden Cano, Simmons's allegations are even twice removed, with Simmons alleging that Warden Cano was "aware" that cells were not being cleaned and "allowed" his subordinates to instruct *their* subordinates to not adhere to the cleaning policy. *Id.* at 26.

Simmons also brings the cleaning policy claim against Defendants Sgt. Tyler Seedig, Officer Robert Lopez, Officer Josa Roa, Lt. Justin Tyler, Officer Robert J. Scampitilla, Sgt. Brandon Pulliam, Officer Justin Lipiecki, Officer Lance Lofton, Officer Michael Garcia, Officer Brett Fox, Officer Manuel Corpus, Officer Smardar Cohen, Officer Jeremy Delacruz,[2] and Sgt. Bradley Johnson. *See* Dkt. No. 14 at 4–7. But, as was the case with their supervisors, Simmons provides no facts supporting any of the individual corrections officers' personal involvement in violating the cleaning policy or failing to improve the conditions of the cells. In response to the magistrate judge's questionnaire, Simmons repeats the same conclusory allegations as to each defendant regarding their alleged failure to "adhere" to a cell cleaning policy, without providing any additional details. *See* Dkt. No. 21 at 25, 27, 28, 30–32, 34–39, 41–42.

Simmons has not provided to the Court any specific facts showing individual personal involvement by the named defendants in violating the cell cleaning policy. And, in order to state a claim, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Moreover, Simmons has not specifically identified the policy at issue. However, even if the Court were to assume the cell-cleaning policy exists, and that Simmons had sufficiently alleged personal involvement by the defendants in violating that policy, such failures alone would be insufficient to establish a constitutional violation. *See Jackson v Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989) (noting that

---

[2] Plaintiff does not provide a brief description of the acts or omissions of Officer Jeremy Delacruz or Sgt. Bradley Johnson in his amended complaint, but does list them as a defendants on the extended caption of the amended complaint. Further details regarding these two defendants' alleged failure to adhere to the cleaning policy are detailed in Simmons's answers to the questionnaire. *See* Dkt. No. 21. at 41–42.

a state's failure to follow its own rules or regulations, alone, does not establish a constitutional violation); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam) (rejecting a prisoner's claim that TDCJ's mere failure to follow an administrative rule violated his constitutional rights).

Even if Simmons had alleged personal involvement, the complained of conditions would constitute no more than a de minimis violation. *See Duvall v. Dallas County*, 631 F.3d 203, 208 (5th Cir. 2011). Challenges to the sanitary conditions in a prison are considered challenges to the conditions of confinement. *Campos v. Webb Cnty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). And while the caselaw recognizes that a lack of sanitary conditions may constitute a constitutional violation, the prisoner in such cases "must demonstrate a pervasive pattern of serious deficiencies in providing for [the prisoners] basic human needs." *Duvall*, 631 F.3d at 208 (quoting *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009)). Moreover, prisoners are entitled only to "reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)). Thus, an Eighth Amendment claim does not lie for sanitation conditions that may be less than ideal or not to the prisoner's liking, provided they are "reasonably sanitary." *See Johnson v. Texas Bd. Of Criminal Justice*, 281 F. App'x 319, 322, 2008 WL 2337324, at *3 (5th Cir. 2008).

"The Constitution 'does not mandate comfortable prisons' . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (internal citation omitted). However, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that

criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

For a condition of confinement to provide the basis for liability under § 1983, a prison official must know about and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This requires the satisfaction of two requirements. First, the condition must objectively be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal citations and quotation marks omitted). Second, the court must subjectively determine whether the prison officials were "deliberately indifferent to inmate health or safety." *Id.*

The conditions complained of here, while certainly not pleasant or comfortable, do not rise to the level of seriousness necessary to satisfy the first condition above. While prisons must meet an inmate's basic human needs, it is not required to conform to cleanliness standards of the non-incarcerated world. *See generally Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), *modified*, 688 F.2d 266 (5th Cir. 1982) (private world expectations and standards may be helpful, but do not represent the constitutionally required minimum); *contrast Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (constitutional violation found where death row inmates subjected to filthy cells with chipped, peeling paint, dried fecal matter and food encrusted on the walls, ceilings, and bars, as well as water from flooded toilets and rain leaks, all contributing to infestation of pests).

Here, the authenticated records of the TDCJ reflect that inmates are furnished a "small amount of cleaning supplies, as unit administration deems appropriate" to keep their cells clean. And it is the responsibility of each inmate to clean his cell. And Simmons admits that he is provided several bars of soap, bippy powder, and a "floor towel" to use in keeping himself and his cell clean.

While the amounts of soap and bippy powder may be deemed insufficient by Simmons's standards, they are not insufficient by constitutional standards.

Further, Simmons does not allege that the peeling paint, mold, rust, or rodents have made him physically ill. The only physical manifestation alleged by Simmons is the flaring of his asthma allegedly caused by roaches. First, assuming the truth of Simmons's allegations regarding his flare ups of asthma does not extend to assuming the truth of his causal attribution. Second, the occasional flaring of asthma is a typically minor condition commonly found even in the non-incarcerated population. Otherwise, Simmons alleges only mental anguish, depression, anxiety, and stress associated with his alleged conditions of confinement. Dkt. No. 21 at 6. Under the PRLA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e).

Simmons has not alleged facts demonstrating such pervasive and serious deficiencies in providing for his basic human needs that would constitute unconstitutional punishment. And Simmons fails to allege the type of serious harm or risk of serious harm that would trigger a constitutional violation. *See Edwards*, 51 F.3d at 581 (aggravation of sinus condition by allegedly high temperatures did not constitute a constitutional violation); *see also Clark v. Gusman*, No. Civ. A. 11-2673, 2012 WL 1825306, at *6 (E.D. La. Mar. 29, 2012), *report and recommendation adopted*, No. CIV.A. 11-2673, 2012 WL 1825302 (E.D. La. May 18, 2012) (claim that heat aggravated high blood pressure was "speculative at best" and thus frivolous).

For these reasons, Simmons's claims regarding the cleaning policy and dilapidated cells should be dismissed.

C.     Failure to comply with fire and safety procedures by conducting annual fire drills

Simmons claims that defendants "refused to adhere to fire and safety procedures and evacuate inmates from premises during fire drill."  Dkt. No. 14 at 4.  Simmons brings this claim against Defendants Hooper, Turner, Porter, Seedig, Sperry, Scampitilla, Pulliam, Lipiecki, Lofton, Garcia, and Valdez Jr.  *Id*. at 4–7. He does not provide any further factual support for this claim except to say that defendants "have repeatedly knowingly and intentionally refused to adhere to fire and safety regulations like evacuating all inmates from the premises at least once a year for a annual fire drill." Dkt. No. 18 at 2; *see also* Dkt. No. 21 at 7–8.  He claims that as a result of the defendants' failure to comply with the fire and safety policy, he has experienced low self-esteem and "stress from being constantly worried about the possibility of dying in a fire due to Robertson Unit staff/defendant(s) being 'ill prepared' to evacuate inmates from premises if and when a fire breaks out on 12-Bldg where plaintiff resides." Dkt. No. 21 at 9.

First, even assuming such a "fire and safety policy" exists, TDCJ's mere failure to follow that policy is insufficient to establish a constitutional violation, as noted above. *See Jackson*, 864 F.2d 1235 at 1251-52. Of course, TDCJ "unquestionably has a duty to provide adequate fire safety for its inmates." *Ruiz*, 679 F.2d at 1153.  But here, Simmons fails to allege even a single fire anywhere within a TDCJ facility where he has been incarcerated.  And other than subjective allegations of low self-esteem and stress allegedly caused by worrying about the possibility of dying in a fire, Simmons does not claim that either he or any other inmate has ever been injured or killed in a fire, or as the result of not being properly evacuated.  Nor does he allege the absence of working fire alarms, smoke detectors, fire sprinklers/suppressors, or any other facts to support his claim of deliberate indifference to his personal safety.  Simmons does not even allege that conditions exist within the TDCJ that make the outbreak of a fire likely or the successful

extinguishing thereof unlikely. Tellingly, in response to the magistrate judge's questionnaire requiring Simmons to provide all other facts to support this claim, Simmons responded, "None!" Dkt. No. 21 at 8.

In short, Simmons's conclusory allegations that the defendants failed to adhere to fire and safety procedures without more fail to state a claim for a constitutional violation. This result does not change even when the Court considers Simmons's subjective fears allegedly related to the TDCJ being ill-prepared "if and when a fire breaks out." For these reasons, Simmons's fire and safety claims should be dismissed.

D.     Exposure to contaminated drinking water

Simmons claims that defendants failed to provide him with safe drinking water and instead provided him with contaminated drinking water. He brings this drinking water claim against Defendants Hooper, Porter, Seedig, Cano, Sperry, Pulliam, Griffin, and Valdez. *See* Dkt. No. 14 at 4–7. Simmons alleges defendants violated the Safe Drinking Water Act and the Clean Water Act. Dkt. No. 21 at 11. He specifically claims that the "Robertson unit's water supply is polluted and contains high levels of alpha and beta radiation along with cyanide and lead." Dkt. No. 18 at 3. He claims that "[t]here have been several times I've felt sick after consuming water from sink in my cell" and "experienced stomach pain after drinking water" after prison administrators instructed the inmates not to drink water at times. Dkt. No. 21 at 10–12. He claims that being forced to drink contaminated water "causes a great deal of anguish/stress," exacerbated his mental health problems, and caused "stomach pains and other harm." *Id*. at 12.

Simmons does not allege facts to demonstrate how he knows the water supply at Robertson contains high levels of alpha and beta radiation, cyanide, and lead. These appear to be unsupported conclusions. And other than his claims of occasionally feeling sick after consuming water in his

cell, Simmons does not allege facts to demonstrate how he knows there are other contaminants in the water except to claim that "[i]f you run cell drinking water from sink on a white/off white rag for 30 min. or more rag turns brown (dark brown) from contamination in said water!"  Dkt. No. 21 at 10.  Simmons does not allege that the Robertson Unit or any other authority conducted water quality testing at the unit or, if they did, what the results of those tests indicate.  He alleges conclusions and otherwise claims that he will be able to prove his allegations if the Court appoints him an attorney and he is allowed to engage the defendants in discovery on these issues.

"Obviously, potable water is a basic human need and must be provided to inmates." *Maddox v. Gusman*, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015). However, Simmons has failed to allege any facts that, if assumed as true, would support a claim that the defendants acted with deliberate indifference regarding the condition of the water in Robertson Unit.  Here, that would require, at a minimum, some plausible allegations that the defendants knew that the water was contaminated, that this contamination posed a substantial risk to inmate health or safety, and that the defendants nevertheless disregarded this risk.  *See Farmer*, 511 U.S. at 834.  Simmons makes no such allegations.  To the contrary, he alleges that "[t]here have been several times when Robertson Unit Administration has ordered us inmates to not drink water from the sink in cell without 1st boiling it."  Dkt. No. 21 at 10.  Far from supporting a deliberate indifference claim, Simmons's allegations indicate that when the prison was concerned about potentially non-potable water, it warned inmates not to drink it.  Indeed, Simmons's allegations seem to suggest that he became ill only after drinking water that he had been warned by TDCJ officials not to drink.  Although he claims that he "had no method/pot to boil the water" — which the Court assumes is both true and necessary given the prison setting — Simmons does not allege that TDCJ employees failed to otherwise provide him with other safe drinking water.

Simmons also fails to allege the duration of any deprivation of safe drinking water, assuming it occurred. Temporary or sporadic deprivations of food or water in the prison context are not always constitutionally offensive. *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) (holding one incident of food poisoning insufficient to state a claim under § 1983). But the longer the deprivation exists, the more likely it is to run afoul of constitutional protections. "In general, the severity and duration of deprivations necessary to state a constitutional violation are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Deapain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001) (*quoting Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 1999)). But the allegations here do not permit the Court to infer a violation that was either prolonged or substantial. A reasonable inference from Simmons's reference to boil-water-orders is that it occurred, if at all, only occasionally or sporadically. *See* Dkt. No. 21 at 10. The Court notes that boil-water-orders are not typically long-term solutions to chronic, systemic water quality problems, but rather are temporary measures implemented on an urgent, as-needed basis.

For these reasons, Simmons's water drinking water claim should be dismissed.

E.     Spinal tap

Simmons claims that defendants[3] have been "participating in sadistic clandestine activity" by "tapping the nerves on/in [his] spine (spinal tap) with an illegal/clandestine apparatus on a daily basis which induces sleep" and causes discomfort in Simmons and other inmates. *See* Dkt. No. 14

---

[3] Simmons first makes these spinal tap allegations when listing the acts and omissions of Warden Sperry and Asst. Warden Cano in his Amended Complaint. *See* Dkt. No. 14 at 5–6. Later in the "Statement of Claim" section, Simmons extends the accusations to all defendants who are wardens, captains, lieutenants, and sergeants. *Id*. at 8. But in a subsequent sworn statement filed with the Court, Simmons ties these activities to "[a]ll other defendants." Dkt. No. 18 at 1–2.

at 5–6, 8  He further claims that these spinal taps cause sensitivity to sound, involuntary twitching, mental anguish, distress, angst, and depression.  Dkt. No. 21 at 13.  He claims that he would be able to provide the court with the "factual evidence" of these spinal taps if the court were to appoint an attorney to represent him and hire a "private investigator who can conduct a 'thorough investigation' into this spinal tap activity!" *Id*. at 14.

"'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (citations omitted) (quoting *Iqbal*, 556 U.S. at 679) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.").

Although the Court must construe the pleadings of pro se litigants liberally, Simmons's spinal tap claim lacks a logical set of facts that supports a claim for relief.  *See, e.g., Inclusive Communities Project*, 920 F.3d at 899 ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(A)(2)))).  Regarding Simmons's claim of having his spine tapped by prison officials, this Court should "not try to decipher what any of this means," since "'[t]o do so might suggest that these arguments have some colorable merit.'"  *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1007 (5th Cir. 2019) (quoting *Crain v. Comm'r*, 737 F.2d 1417, 1417 (5th Cir. 1984) (per curiam)).  For these reasons, Simmons's claims of spinal tapping should be dismissed.

F.    Lack of personal involvement by other defendants

Even if the Court were to assume that one or more of Simmons's claims as described above constitutes a violation of his constitutional rights, it bears repeating that Simmons fails as to each defendant other than Gregory to provide facts describing the personal involvement of those defendants. *See* Dkt. No. 21 at 22–42. Claims of liability under § 1983, regardless of the particular constitutional theory, must be based upon allegations of personal responsibility on the part of the defendant. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant."); *Jacquez v. Procunier*, 801 F2d 789, 793 (5th Cir. 1986) ("In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendant's participation in the wrong alleged."). To the extent Simmons attempts to allege personal involvement on the parts of  defendants other than Gregory, he does so in a conclusory manner despite being afforded multiple opportunities to plead sufficient facts to survive screening. For that reason alone, Simmons's claims can be dismissed against each of those defendants for failure to state a claim.

G.    Declaratory and injunctive relief

To the extent Simmons seeks declaratory and injunctive relief in the form of requiring defendants to comply with the TDCJ cell cleaning policies, that relief should be denied.

"An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). A party seeking a preliminary injunction or temporary restraining order must prove four elements:

1.  a substantial likelihood of success on the merits of his case;

2.  a substantial threat that the plaintiff will suffer irreparable injury;

3.  that the threatened injury outweighs any harm that the injunctive order might cause the defendant; and

4.  that the injunction is in the public interest.

*Women's Med. Ctr. v. Bell*, 248 F.3d 411, 419, n.15 (5th Cir. 2001).

Injunctive relief will be denied if the movant fails to prove any of these four elements. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).  A federal court may issue a temporary restraining order without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).

In the prison context, courts should exercise great caution when considering injunctive relief.  *Bell v. Wolfish*, 441 U.S. 520, 547–48, 562(1979) (recognizing the wide-ranging deference given to prison administrators to maintain institutional security and warning courts against becoming "enmeshed in the minutiae of prison operations").  When a plaintiff requests injunctive relief that would require the court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976).  Principles of equity militate heavily against granting injunctive relief except in the most extraordinary circumstances.  *Id*.

Simmons has not met the requirements for a preliminary injunction or temporary restraining order.  He fails to show a substantial likelihood of success on the merits for any of the claims he brings related to cleaning policies/supplies.  That is, for the reasons discussed above, he fails to demonstrate to the Court that he will likely succeed on this claim.  Nor has he carried the burden of showing that the threatened injury to him outweighs the harm that the injunctive order might cause the defendants.  He similarly fails to overcome the deference owed to prison administrators in operating a correctional facility.  Finally, he has not identified any public interest

21

that would be served by issuance of the injunction.  For these reasons, his request for injunctive relief should be denied.

To the extent Simmons seeks a declaratory judgment regarding his legal right to enforcement of the cell cleaning policy or to additional cleaning supplies, that claim should also be denied.

Under "[t]he Declaratory Judgment Act . . . federal courts [are authorized] to declare the rights and other legal relations of any interested party. . . ." *Val–Com Acquisitions Trust v. Chase Home Fin., L.L.C.,* 434 F.App'x 395, 395 (5th Cir. 2011) (citations omitted).  However, "a declaration may issue only to resolve an actual controversy between the parties. An actual controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (citations omitted).  Also, "[t]he controversy must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Id.* at 395–96 (citations omitted). Further, the "plaintiff[] ha[s] the burden of establishing the existence of an actual controversy under the Act." *Id.* at 396 (citations omitted).

Here, for the reasons explained above, Simmons has failed to demonstrate an actual controversy related to his cell cleaning or the provision to him of additional cleaning supplies.  For this reason, his request for declaratory relief should be denied.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the District Court DISMISS Simmons's Amended Complaint and all claims therein with prejudice for failure to state a claim

on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  This

dismissal shall constitute a "strike" within the meaning of 28 U.S.C. § 1915(g).[4]

It is, therefore, ORDERED that this case be transferred back to the docket of Senior United

States District Judge Sam R. Cummings.

A copy of these findings, conclusions, and recommendation shall be served on all parties

in the manner provided by law.  Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within 14 days after being served with

a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection

must identify the specific finding or recommendation to which objection is made, state the basis

for the objection, and specify the place in the magistrate judge's findings, conclusions, and

recommendation where the disputed determination is found.  An objection that merely incorporates

by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file

specific written objections will bar the aggrieved party from appealing the factual findings and

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996).

IT IS SO ORDERED this 13th day of January, 2021.

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

---

[4] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.